Morning, Ms. Arango. May it please the court, Jamie Arango on behalf of the petitioner Sobura Lasu. The Board of Immigration Appeals has authority to review an immigration judge's finding of facts for clear error. This includes the finding on the likelihood of future events. Clear error analysis requires that the board determine if the immigration judge committed clear error in deciding that the petitioner was more likely than not to be tortured if returned to South Sudan. Is this issue before the BIA now in the motion to reconsider? The motion to reconsider was dismissed, Your Honor. Was dismissed? It was. Okay, is there a separate appeal of that or not? There is not, Your Honor. Okay, so the issue is pretty squarely before us then? It is, Your Honor. On what grounds was it dismissed? That's just curious. They sustained the previous order of the court. They didn't issue a new decision. And on the matter of jurisdiction before this court, we are only asking the court to decide matters of law and we are not asking the court to review the petition. So the criminal convictions of the petitioner, while they they do not allow you to review the petition or the court's decision in this matter, it does allow you to review the legal standard that was used by the board in reaching its decisions. It's unclear in this matter what standard of review the board used when reviewing the factual determinations that were made by the immigration judge. The board states at the outset of its decision that it's applying the clear error standard to credibility and factual determinations and the de novo standard to issues of law, discretion, or judgment. The decision from the board, however, blends questions of law and factual determinations, seemingly applying a de novo standard to both. And I will point out that this decision from the board is different from the decision that you that was argued before this court in Gema versus Barr. That decision was issued November 8th. The board in that in that decision actually specifically stated that they were reviewing the immigration judge's likelihood determination by using a clear error standard. The board did not do this in the decision that's before you now. The board concludes that the immigration judge erred by stringing together a series of suppositions to conclude that it is more likely than not that the petitioner will be tortured if returned to South Sudan. This suggests that the board finds the clear error of the immigration judge to be they relied on suppositions, not facts, to reach his decision. Yet the board does not actually discuss the factual determinations found by the judge or why they were mere suppositions. Using the Gema versus Barr decision that was issued on November 8th by this court, the petitioner can clearly demonstrate that in this matter, the written decision of the immigration judge did not rely merely on his belief of country conditions in the record to draw his factual conclusions. The board has not shown that those factual conclusions are clearly erroneous or clearly based on a hypothetical chain of events that is not likely to occur. The board states that the record does not reflect that South Sudanese authorities or anyone that the respondent fears has the specific intent to inflict severe pain or suffering on him. The board also states the evidence does not support the conclusion based on the respondent's ethnicity alone that he is more likely than not to experience torture in South Sudan. Isn't that a sufficiency? Isn't it? I mean, aren't they saying, I'm sorry, isn't that not a sufficient? In other words, it was just we were looking at the same factual determinations and it's just not enough to meet this legal standard. But in fact, to reach this conclusion that they've reached, they have to reach a different factual determination. So the immigration judge in this decision didn't simply state there are gross and flagrant mass human rights violations in South Sudan. He specifically stated that this petitioner was a member of a minority equatorial tribe and that he was at risk specifically from the Dinka government that was controlling South Sudan at the time. So those are specific factual determinations that were made that the board is now determining, making a different determination from the facts. But they're not stating that the immigration judge committed clear error when finding those facts. So they're reaching, using, if they're using the same set of facts and reaching a different determination, that's fact finding. And they're not allowed to do that. What about the case law that indicates that it has to be, that it's this particular person who would face the torture as opposed to this person as a member of a group? Do you agree that our case law suggests that that's an important distinction? Such that perhaps this would be that the IJ just didn't, that based on the facts presented, you could agree with them all that just as a matter of law, he hadn't met his burden? The question of law, of course, is reviewed de novo so they can reach that determination. But the question of him being specifically targeted and having a likelihood, that is a specific determination of fact that was made by the immigration judge and can only be overturned if the the board can show that he committed clear error in doing that. And in finding that determination. Wouldn't it be a legal error if the IJ said there's this gross pattern and didn't specifically say it was the tribe that your client was a member of? And then the BIA said, well, that's a mistake of law because the A circuit says it has to be particular to that tribe. Well, but the immigration judge decision does point to evidence that it is minority Equatorial tribes in South Sudan. Now, the argument that this petitioner has to show that he specifically will be targeted, he's done that because of the case law for the Convention Against Torture shows that. So if he's more likely than not to be tortured, his argument that he'll be tortured is based on his ethnicity. And then if you look at the immigration judge's decision and the evidence that he based that decision on, the evidence that he highlights in his decision, he points out exactly why, based on his ethnicity, this person is at risk. Evidence such as. He specifically explains what's happening in South Sudan because that's important, right, what's why, what groups are involved in in the ethnic violence in South Sudan. And I think the decision of the board in this case kind of overlooks that. So the situation in South Sudan is that the majority ruling party, the Dinka party, is essentially ethnic cleansing everyone who is not a member of their tribe. So their target is anyone who is not them. So it's not unlike Nazi Germany and the Jewish people and Germans targeting the Jewish people for ethnic cleansing. It's the same situation. This controlling party, this majority party in South Sudan, is literally targeting anyone who does not, is not a member of their tribe. So the Dinka is the largest tribe in South Sudan. And the immigration judge highlighted. Is that what the IJ found? That every non-Dinka tribe is targeted? Well, he pointed to the evidence in the country condition reports that these are along ethnic lines. What I think is being else. So the obvious in the country condition reports, and there are other evidence of specific targets. To use your example, the Nazis targeted Jews, but not necessarily Catholics, right? Of course. So did the IJ find that every non-Dinka tribe was subject to torture? He found that the violence is along ethnic lines, and those are the ethnic lines, the Dinka majority against the targeted. And he broadly described the minority tribes and never identified with any degree of particularity the tribes that Mr. Lashu claims membership in or derivative association with. And if you look at all that, I mean, isn't it really more just the countrywide condition than any specific identification of what risk does this particular person face? Well, so that kind of, again, going back to the country conditions, there are 60 minority tribes in Sudan. So for any country condition report to sit and list that every single tribe is being targeted, that's why instead there's this generic finding that the ethnic cleansing is along ethnic lines. I get that, but there's no specific findings that bolster that conclusion as applied to the specific facts of this particularized case, right? I mean, he held a hearing, could have found evidence that tied more directly to Mr. Lashu. And I'm not sure that that evidence would be available, because again, there's such, and even including Mr. Lashu himself is a member of two ethnic tribes. So not just one, but two. So these ethnic tribes are small, they're diverse, they're spread out. But the fact is, is that the controlling government, the Dinka government is seeking to eradicate everyone else. So that is the... I don't think that it matters. I think we're kind of focused on the size of the group and that what's important is that he's a member of a really big group. Excuse me. I don't think it matters that he's the member of a really big group, but members, he's a member of the group. And that the judge did find that as a member of that group, he is at risk from the Dinka government. So this was a specific finding. This wasn't just, you know, things are really bad there, and so I don't think he can go back, because if he goes back, he could be hurt. Well, of course, anyone who goes there could be hurt. But this was a finding that this petitioner himself, because of his membership in a minority Equatorial tribe, was at risk from the Dinka government. And he highlights the evidence. The immigration judge states that he reviewed everything that was provided to the court in Exhibits 14 and 15 in reaching his determination. Some of those are articles regarding specific violence against Equatorial tribes in South Sudan. So that would demonstrate that the immigration judge considered the evidence that Mr. Lesue specifically would be targeted. And again, the board seemingly ignores that evidence and draws its own conclusions. In drawing its own conclusions, it's committing prohibited fact-finding. I'm going to reserve the rest of my time for rebuttal. Very well. May it please the Court. This past Thursday, this Court decided a case in Gema v. Barr. Judge Grundy, I believe you were on that panel. And it involved a identical situation as the Instant case. Procedurally, there's no difference between what happened here and what happened in the Gema case. Both cases involved a non-citizen. Can I ask you a preliminary question? Sure. Will you concede that the issue has now been exhausted? Exhausted. We were actually discussing that at the moot. A petitioner did seek reconsideration as required for exhaustion but did not seek a review of that decision. So I looked around for case law. I couldn't find an actual situation involving. Now, we would think that to exhaust the issue, a petitioner should have sought review of the reconsideration decision as well. Because technically, the reconsideration is an entirely separate matter than the instant matter. So this would be a case of first impression. Whether or not to actually exhaust the issue, you have to not only seek reconsideration but also seek review of that decision as well. Is the time to appeal the reconsideration passed? Yes, I believe so. The reconsideration decision was issued sometime in the spring. It was shortly before we filed our answering brief. I should have checked before I filed the answering brief. The reconsideration decision was issued by the Board a few days before we filed it. So the answer is yes, it has passed. So our position is it's not unexhausted. But we also believe that even if it were exhausted, that the petition should be denied. Because based on GEMA, the only difference between this case and GEMA, again, it also involved a non-citizen in South Sudan, grew up in the United States, committed some crimes, and is based his petition onto the application for a convention against torture based on civil strife in South Sudan, even though he personally had never been there, had no contact. The non-citizen in GEMA argued substantially similar to the petitioner here. Bad things are happening. Everyone's killing everybody. Everyone's raping everybody. And therefore, if I go back, chances are that something bad is going to happen to me. The immigration judge granted the application for a convention against torture. The Board is that the Board in the GEMA case found that the finding of likelihood of future harm constituted clear error. Here, the Board determined that the amount of proof that the petitioner set forth was legally insufficient to justify cap protection. The difference may be a subject of an academic law review article. But we would submit here in the real world, it really does not make a difference whether it's clear error or legally insufficient proof. Either way, you get to the same spot. Every court, including this one in GEMA, has held that, and again, the Attorney General has great sympathy for people who are facing civil strife in their native countries, that this generalized violence. What else could an individual like Lassu present if the country conditions report describes a situation where the majority is systematically, and I'll just use the word torture to subsume all of the types of crimes that can be committed, systematically imposing torture upon minority groups, and this person identifies and can prove up that he is a convict. If you're talking about genocide, we brought up Nazi Germany earlier, other examples, maybe Rwanda perhaps, and perhaps some other unfortunate incidents where the government was systematically, specifically targeting specific groups, then that conceivably might be a potential claim for the Convention Against Torture. That does not appear to be the case here. General civil strife, everyone killing everybody else, I mean- I thought this was the finding in the country report that it was the majority who was, it was along ethnic lines, and that there was a line between the majority and the minority tribes, and it was the minority tribes that were being targeted. What's the difference between general, and I guess I'm trying to push here on what the difference between general strife in a troubled country, and a systematic imposition of power and torture from a majority over an ethnic minority? Well, there has to be, in the case of the Convention Against Torture, there has to be targeting of a specific group, the minority, I mean, that just is not sufficient. There are provisions of the Immigration and Nationality Act that would allow generalized groups facing civil war to seek safe haven in the United States. In the case of Europe, the State Department can authorize extra refugee admission spots. Eastern Europe, Vietnam, places like that where the minority, so to speak, for lack of a better word, was able to seek safe haven. They apply, there's spots, 5,000, 10,000, depending on what the State Department authorizes, and they apply to the United States Citizens Immigration Service, people downstairs on the floor, and the burden of proof is lower. But that has to come through the State, the State Department has to identify that as a process for a certain country? There's no specific intent requirement for those provisions, and so, and as a matter of fact, the State Department did allow people from South Sudan to apply in 2000, I believe that's how his parents came over, that's not quite in the record, but he's trying to use the Convention Against Torture as an end around to that process, because the Convention Against Torture does require a specific intent, your particular tribe is being targeted, and not just one of many, so that's just not what the Convention Against Torture was designed to do. And again, we cite case law from other courts who have discussed the unfortunate situations where bad things are happening in the other country, and the Convention Against Torture is just not the remedy for those particular non-citizens to seek immigration relief, so I don't know if that satisfies me. Just as a procedural matter, if in fact, if the BIA had not overturned the IJ's decision, what would have happened? Would he have just been sent to Egypt? Well, the Immigration Judge granted the Convention Against Torture, that means he gets to stay in the United States. I thought it was denied, I mean... I thought it was denied as... Oh, oh, oh, I see what you're saying, I see what you're saying. I do not know the answer to that. We were wondering why he was not sent back to Egypt. That's really an issue for the Department of Homeland Security rather than DOJ. It's possible that Egypt, I mean, there was nothing in the record indicating he was a citizen of Egypt, he wasn't a citizen of South Sudan, so it's possible Egypt just wasn't going to accept him. I just wondered if that's why there was an appeal, if in fact he was going to go to one place, why there's an appeal as to the South Sudan finding when if that had just remained as is, he might have been just sent to Egypt. I don't have an answer to that question. It's really not our province, but just, I mean, he did have family in South Sudan, he was a citizen of South Sudan. South Sudan accepted him. The government has to say, yes, we'll accept this person, and this isn't in the record, but I would think common sense would suggest if South Sudanese government wished to torture this guy, they probably would not have accepted him back for repatriation. But why he wasn't sent back to Egypt, I don't have an answer for that. So, but yes, but again, I mean, we think that GEMA here should be, I mean, if not controlling, otherwise highly persuasive, that the only difference between the procedural posture, clear air versus legally insufficient, it's just, it's not enough to grant the petition. In this particular case, I mean, in the reconsideration application, the petitioner made very similar arguments that he makes up here, that like the board engaged in improper fact-finding. In the reconsideration decision, I can't forward it to the panel. If you want to see it, you can take administrative notice of it, even though it's not in the record. But the board said we did not engage in fact-finding, but we held, similar to what we argued in our brief, that we determined that like your evidence was legally insufficient to meet the burdens of cap protection. And the board, in this case, did articulate the correct standard of review, clear air for factual findings, and de novo review for everyone else, which is a very basic standard of review. And we actually hear this type of situation rather often where the immigration judge grants relief and the board reverses and the petitioner goes to court of appeals claiming improper fact-finding. That's not an unusual tactic. But in this case, we do not think this is the rare occasion where the board misapplied the standard of review, like the board determined in accordance with prevailing case law nationwide, including now in the GMA case, that just bad conditions where everyone is killing everyone is not sufficient to meet the burden of proof required for protection of the Convention against Torture. And the GMA case also dispenses with the petitioner's argument that the board misapplied this court's precedent. The GMA case applied the same, a demo case, that the board cited in this case and that we cite in our case, that to the extent that gross human rights abuses is generalized as civil strife is not sufficient for the Convention against Torture, you need specific intent. And that about covers my main points. If there's no other questions, I think I'll rest on the briefs. Let me ask you, toward the end of the BIA's opinion, they say the respondent's claim is based on predictions of future events and the evidence does not show that each step in the hypothetical chain of events is more likely than not to occur. Prediction of future events is a fact-finding, right? Prediction of future events is a fact-finding, but whether or not... Wouldn't it have been at least been better for them to have said, and it was clearly erroneous for the IJ to have found... If they had the benefit of the GMA decision, I mean, I'm sure, I have no doubt that's what they would have said. So, I mean, but, I mean, the board, I mean, these were, I mean, the board is as big as 15 members. I mean, not all of them will use the language to get to the same point. Yes, I suppose it would have been better if the board made a specific clear finding. They did not hear whether they based their ruling on sufficiently the evidence. But as we pointed out in our brief, whether or not a factual finding is predicated on non-speculative evidence, whether the factual basis for that finding or speculative is a question of law. So there was a Fifth Circuit decision cited on one of our footnotes. So even assuming that the board did commit error, we would submit the futility exception would apply here that if the court were to remand to correct this, that one part, the board would just reach the same result based on GMA here. So we do not think that remand is necessary. We think the board reached the correct result no matter how it actually got there. So any other questions? Very well. Okay. Thank you, Mr. Santon. Thank you very much. Ms. Rongo, do you think the failure to appeal the denial of the motion for reconsideration means that it was not exhausted? No, Your Honor, because there was no new facts or evidence in the motion to reconsider. Motion reconsider was just based on asking the board to reconsider the decision that it's already made. The issue that would have been before you after that is identical to the issue that's before you now. Once the reconsideration was denied, in my opinion, that we have exhausted all necessary remedies that we need to before coming to you and asking you to remedy the issue. The government seems to argue that there's no difference between the board drawing conclusions or speculating on the evidence, that it can be reviewed as de novo standard because it's a question of law. But in fact, a speculation would be a likelihood finding, and those findings are reviewed under a clearly erroneous standard. So the determinations that were made from the immigration judge should only be overturned if the board finds that the judge committed clear error in making those findings. So the board needs to make a decision based on the factual determinations that were made by the immigration judge, then apply the law. If they instead want to make their own factual determinations, they have to state that they are using a clear error standard and overturning the factual determinations that were made by the immigration judge. They simply don't do that. The government also stated that Mr. LeSue is using the Convention Against Torture as an end-around to be able to stay in the United States. That's simply not true. It's the only relief afforded to him at this point in the proceedings. He has exhausted all other relief and remedies. There's no way for him to go back to South Sudan and then to seek refugee status anew. He simply can't do it. So he can't go back, be threatened with torture, and then again seek to be granted refugee status in the United States. It won't be granted. He doesn't meet the standard. So the only way that relief is available to him is through the board's opinion. They talk about there was an impermissible stringing together of suppositions arising out of country conditions. That impermissibility is a legal conclusion drawn from the facts. You look at the facts and you'd say there's this supposition, that supposition, and that supposition. Doesn't that undermine your argument? Actually, it doesn't. In order to determine that these are suppositions, the board has to make a different finding of fact, correct? So it has to review the evidence. Does it really? Because it could say this fact is proven, that fact's proven, the third fact is proven. Those facts are all part of a supposition that we suppose that we have evidence he's a part of this East Equatorial tribe, at least two of them, that there is widespread Dinka versus East Equatorial tribe activities, that there is civil rights and gross violations, and that that's a series of suppositions, right? And they could say that as a matter of course, lumping them all together and then drawing a final conclusion is a legal error. But that ignores the rest of the judge's decision and the rest of the judge's factual determinations. It's essentially saying we're only going to focus on these facts and in my opinion, that's impermissible fact finding. Thank you. Thank you, Ms. Arango. Well, the court appreciates your appearance today and arguments. The case is submitted and will be decided in due course.